IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 19-369 |
| ) | **\*UNDER SEAL\*** |
| ) | **\*EX PARTE\*** |
| LAFON ELLIS ) | |

## ORDER OF COURT

AND NOW, this <u>30th</u> day of <u>April</u>, 2020, upon consideration of the foregoing Amended Request for Issuance of Subpoenas Duces Tecum Pursuant to Rule 17(b) and 17(c) of the Federal Rules of Criminal Procedure, it is hereby ORDERED, ADJUDGED, AND DECREED that the requested subpoena shall be issued and served by an authorized representative of the Federal Public Defender Office, directing the persons listed in the amended schedule to produce the requested records to the Defendant's attorney, Khasha Attaran, at the Federal Public Defender's Office located at 1001 Liberty Ave., Suite 1500, Pittsburgh, PA 15222; and by the requested date listed on the schedule.

IT IS FURTHER ORDERED that the within Order, amended schedule, and subpoena be sealed and that only an authorized representative of the Federal Public Defender be permitted to view and utilize the within Order, amended schedule, and subpoena.

# AMENDED SUBPOENA SCHEDULE

Cybergenetics
160 N Craig St., Suite 210
Pittsburgh, PA 15213

Must provide the following to Khasha Attaran, Federal Public Defender's Office, 1001 Liberty Ave., Suite 1500, Pittsburgh, PA 15222 within two weeks of receipt of the subpoena request.

1) All documents related to Lafon Devon Ellis.

2) Any non-disclosure agreement between the Allegheny County District Attorney's Office and Cybergenetics in connection with the use of TrueAllele.

3) Any non-disclosure agreement between the United States Attorney's Office for the Western District of Pennsylvania, and Cybergenetics in connection with the use of TrueAllele.

4) All emails between employees of Cybergenetics to law enforcement including members of the Allegheny County District Attorney's Office, and members of the United States Attorney's Office for the Western District of Pennsylvania in reference to Lafon Devon Ellis.

5) For a review of Cybergenetics' claims that TrueAllele is verified and/or validated, we would request materials underlying the software version(s) used in the case specific to Lafon Ellis, and any version(s) used to support claims of validation:

   1. Published or internal standards or guidance documents against which TrueAllele is claimed to be verified and/or validated.

   2. Software development and operating materials, including but not limited to:
      a. Requirements specifications
      b. Design descriptions
      c. Source code, including dependency and build instructions and scripts
      d. Executable versions of the software, including operating environment descriptions
      e. All version control system history (e.g. git or SVN)

    f. Test plans and reports
    g. Issue and bug tracking, including issue reports and change requests
    h. Internal and external communications regarding development plans, processes, or requests
    i. Change logs
    j. Operating manuals, plans, and procedures
    k. Training materials used by personnel involved in validation processes or the instant case
    l. Proficiency tests, including responses, used by personnel involved in validation processes or the instant case
    m. Verification and validation plans and reports
    n. Qualification and user testing plans and reports
    o. Internal software development, quality assurance, and quality control processes, plans, and reports

3. Records and electronic data used or generated by TrueAllele during validation study efforts, and any extant summaries thereof.

4. Products of validation study efforts, including proposals, notes, memos, reports, graphics, tables, summaries, conclusions, and any resulting publications, presentations, and reports.

6) With reference to the work performed in relation to Lafon Devon Ellis, disclosure of the following is requested:

    a. **Biological testing case file**: Please provide a complete copy of the case file including all records made by each laboratory in connection with biological testing in the instant case, including biological screening, serological testing, presumptive testing, microscopy and DNA testing. Please provide documentation of any DNA profile uploaded to a local, state or national DNA database (LDIS, SDIS or NDIS). Please provide photographic quality copies of all photographs in the original case file (including photographs of evidence). Electronic copies of photographs are acceptable.

    b. **Chain of custody and current disposition of evidence**: Please provide copies of all records that document the treatment and handling of biological evidence in the instant case, from the initial point of collection up to the current disposition. This information should include documentation that indicates where and how the materials were stored (temperature and type of container), the amount of evidence material that was consumed in testing, the amount of material that remains, and

where and how the remaining evidence is stored. In the event that the chain of custody spans several different agencies or laboratories, please address this request to each agency and/or laboratory that handled said items.

c. **Data files**: Please provide copies of all computer data files created in the course of performing the DNA testing and analyzing the data in this case (i.e., both raw data and processed data). These data files should include all sample files (".fsa" and/or ".hid"), project files (".ser"), matrix files, size standard files and analysis method files. In the event that a particular data file cannot be produced, please provide name of said file with explanation for non-production.

d. **Laboratory protocols, frequency tables and interpretation guidelines**: Please provide a copy of the standard operating protocols (SOPs), frequency tables and interpretation guidelines relied upon to perform the testing in the instant case. Interpretation guidelines should include those that address; (i) peak detection threshold(s), (ii) stochastic threshold(s), (iii) interpretation of mixed samples, (iv) declaration of inclusions, exclusions and inconclusive findings, and (v) policies for reporting results and statistics.

e. **Unexpected results and corrective actions**: For each laboratory that performed DNA testing in the instant case, please provide copies of the laboratory's log of unexpected results and corrective actions. The logs should be provided for the time period beginning six months before the start of testing and ending six months after the completion of testing. Documentation should be provided for unexpected result events that arose due to mechanical, chemical and analyst operations, including; contamination, the presence of extraneous DNA, sample handling errors or any other reason. The logs should be provided for all laboratory personnel not just the analyst(s) who performed the testing in the instant case. Please note, this is a request for the logs themselves, not just for entries within the logs that pertain to the instant case.

f. **Accreditation**: Please provide copies of the following for any laboratory that performed DNA testing in the instant case: All licenses or other certificates of accreditation held by the laboratory; Quality Assurance Audit Documents bracketing the testing in the instant case, including the last external audit before the start of testing, the first external audit after the completion of testing and all audits, both external and internal, for the time period between. This information should include the audit

  documents and all communications between the auditing agency and the laboratory being audited. Electronic copies preferred.

g. **Laboratory personnel**: Please provide background information for each person involved in conducting or reviewing the DNA testing performed in the instant case, including: Current resume and job description; A summary of proficiency test results.

h. **Communications**: Please provide a copy of all communications between laboratory personnel and any other party with regard to the instant case, including letters, memos, emails and records of telephone conversations (including communications with regard to any DNA profile uploaded to a local, state or national DNA database (LDIS, SDIS or NDIS)).

i. How were the TrueAllele results verified in this case?

j. Summary of bases relied upon by TrueAllele.

k. Written reports relied upon by TrueAllele and person operating TrueAllele

l. Tests relied upon by TrueAllele and person operating TrueAllele

m. The underlying science used by TrueAllele software to give the ultimate conclusion.

n. Features and limitations of probabilistic genotyping program (TrueAllele) and the impact that those items will have on the validation process

o. All validation studies documented by the lab in accordance with the FBI Quality Assurance Standards for Forensic DNA Testing Laboratories.

p. Access to documentation that explains how the software performs its operations and activities, to include the methods of analysis and statistical formulae, the data to be entered in the system, the operations performed by each portion of the user interface, the workflow of the system, and the system reports or other outputs.

q. Proof of appropriate security protection to ensure only authorized users can access the software and data. List of names who accessed the data.

  r. Jurisdiction in which TrueAllele has not been admitted under either Daubert or Frye standards.

COSTS TO BE BORNE BY THE GOVERNMENT.

*Donetta F. Ambrose*

_____

Donetta W. Ambrose
United States Senior District Judge