SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                   Plaintiff,<br><br>vs.<br><br>EMANUEL FAIR,<br><br>                   Defendant. | No. 10-1-09274-5 SEA<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEFENSE MOTION TO COMPEL CYBERGENETICS' TRUEALLELE CASEWORK SOURCE CODE |

A hearing on the Defense Motion to Compel Cybergenetics' TrueAllele Casework Source Code was heard from October 31 to November 28, 2016. After considering the evidence submitted by the parties, to wit: the Defense Motion to Compel Cybergenetics' TrueAllele Casework Source Code, the State's Response to Defense Motion to Compel TrueAllele Source Code, the Defense Reply Regarding Motion to Compel TrueAllele Source Code, the exhibits attached to the pleadings, the testimony from witnesses including Jay Caponera, Nathan Adams, Dan Krane, Mark Perlin, David Balding, Kirk Lohmueller, and Brian Ferguson, the exhibits offered into evidence and hearing argument, the court makes the following findings of fact and conclusions of law:

**A.** **<u>FINDINGS OF FACT</u>**

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION
TO COMPEL TRUEALLELE CASEWORK SOURCE CODE - 1

Mariane C. Spearman
516 3rd Avenue, Room C203
Seattle Washington, 98104
(206) 477-1647

1. The Court heard testimony from Nathan Adams, a systems engineer at Forensic Bioinformatics in Dayton, Ohio. Bioinformatics is a DNA consulting company founded by Dr. Daniel Krane. Mr. Adams has a B.S. in Computer Science and is working towards obtaining his M.S. in computer science.

2. Mr. Adams testified that source code is the human language that a computer can understand and translate to machine language in order to execute its operations. TrueAllele software contains 170,000 lines of code.

3. Mr. Adams testified that he had reviewed the source code of another probabilistic genotyping system (PGS) called STRmix under a protective order and that because of that order, he was unable to share any specific findings from his source code review.

4. Mr. Adams testified that his review of STRmix's source code occurred with numerous precautions, in addition to the protective order, to insure that the code would not be stolen. Mr. Adams was not allowed to bring any photographic, recording, or USB devices into the room where the review occurred, the computer on which he reviewed the code was disconnected from the internet, and that he was monitored at all times by an armed guard.

5. Mr. Adams testified that in 30 hours he was able to identify potential issues in STRmix's source code that negatively affected the functioning of the software that could not have been learned from any other source. However, due to the protective order, Mr. Adams could not disclose what those potential issues were.

6. Mr. Adams testified that there are three levels of source code review. First, a dedicated software firm could be hired to review the code for possible errors. This would cost hundreds of thousands of dollars. A mid-range review involving a 200 hour review of the code would cost approximately $40,000 at $200 per hour. This would take several months. Lastly, a brief

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION
TO COMPEL TRUEALLELE CASEWORK SOURCE CODE - 2

Mariane C. Spearman
516 3rd Avenue, Room C203
Seattle Washington, 98104
(206) 477-1647

20 hour review could provide insight into the general practices and standards of the code but would not allow a thorough investigation of all the models of molecular behavior.

7. The Court heard testimony about a number of different PGS products. Many PGS are open source, meaning the source code of the software can be reviewed by the public. PGS including TrueAllele, STRmix, and FST are proprietary and do not publish their source code. STRmix and FST have disclosed their source codes pursuant to court order. TrueAllele has not been ordered to disclose its source code[1].

8. Brian Ferguson is a lawyer with over twenty years' experience in intellectual property litigation. Mr. Ferguson is the co-chair of the Patent Litigation department at the law firm of Weil, Gotshal, and Manges, LLP, in Washington, D.C. Mr. Ferguson's work focuses on patent infringement cases involving disputes between companies regarding whether or not a particular patent has been violated.

9. Mr. Ferguson testified that source code is disclosed in intellectual property litigation because that is the only way for the particular functionality of the product to be assessed. If a dispute arises between smartphone companies over whether a particular function of a smartphone or tablet has been copied by a rival company, there is a need to determine how the software was programmed. That can only be done by reviewing the source code.

10. Mr. Ferguson testified that in intellectual property litigation, the parties retain a software engineering expert to review the source code with guidance from a subject matter expert. The subject matter expert will review the source code with the attorneys to identify the particular functionality in the patent that is key to determining whether or not an infringement has occurred. Then the source code expert will focus on reviewing that functionality in the source code.

---

[1] A California trial court did order Cybergenetics to disclose its source code but this order was later overturned on appeal. *People v. Superior Court (Chubbs),* 2015 WL Reporter 139069.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION
TO COMPEL TRUEALLELE CASEWORK SOURCE CODE - 3

11. The defense made an oral offer of proof to the Court that experts like Dr. Krane, Mr. Adams, Dr. Lohmueller, or Dr. Balding could be used as subject matter experts should the Court order TrueAllele's source code disclosed. Additionally, the defense made an oral offer of proof that it had contacted a software engineer expert who was qualified and available to review the source code itself.

12. Dr. Balding testified that he not understand how TrueAllele performs some of its functions, including how it models drop out and drop in and that no publication or document describes how TrueAllele accounts for drop-out. Dr. Balding further testified that he wrote the original source code for LikeLTD but the current version was written by software engineers and he hasn't reviewed it.

13. Dr. Lohmueller testified that TrueAllele's source code would be helpful in understanding how TrueAllele behaves when it is modelling samples where there is the possibility of drop-out. Dr. Loehmueller further testified that scientists can test data without the source code. The source code is only one piece of the validation process. In fact, he has never looked at the source code for his own PGS, Lab Retriever.

14. Dr. Krane testified that first and foremost he is a Biology professor and has no formal degrees in math or statistics. He testified that he could not review TrueAllele's source code entirely by himself. He would need at least a team of at least a dozen software engineers to do a comprehensive review although even a 40 hour review might reveal something important. He testified that the source code would be helpful to understand how the software deconvolutes mixtures; distinguishes signal from noise when looking at peaks as low as 10/0 RFU; and identifies peaks and peak heights, which TrueAllele does using a method different than any other PGS.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION
TO COMPEL TRUEALLELE CASEWORK SOURCE CODE - 4

Mariane C. Spearman
516 3rd Avenue, Room C203
Seattle Washington, 98104
(206) 477-1647

15.     Dr. Mark Perlin, founder of Cybergenetics, testified that his company has invested millions of dollars over the last two decades to develop the TrueAllele software. The technology is patented but the source code has never been revealed in any patent. Cybergenetics considers the TrueAllele source code to be a trade secret. Dr. Perlin testified that disclosure of the TrueAllele source code would allow competitors to copy the software and cause irreparable financial harm to his company.

16.     Dr. Perlin further testified that disclosure of the source code is not necessary to validate the reliability of the program.

17.     Jay Caponera, a forensic scientist with the New York State Police, testified that the source code is not necessary to determine the reliability of TrueAllele because the code is not used in validation.  Reliability of software is determined by use of the validation metrics of sensitivity, specificity, accuracy and reproducibility. He testified that he validated TrueAllele in 2011 without access to the source code.

18.     John Donahue is employed as the DNA Technical Leader at the Beaufort County Sheriff's Office Forensic Services Laboratory in Beaufort, South Carolina. In his Declaration, he testified that his lab has used TrueAllele for three years. They purchased the software in 2013 and spent two years performing validation studies before implanting it into casework in January 2016. He testified that the source code was not necessary to determine the reliability of TrueAllele because in their validation studies they tested TrueAllele against known samples and known results and obtained the expected results.

19.     Thomas Hebert is employed as the DNA Technical Leader for the Baltimore City Police Department. In his Declaration, Mr. Hebert testified that his lab has used TrueAllele for casework since October 2015. In his opinion, the source code is not necessary to determine the

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION
TO COMPEL TRUEALLELE CASEWORK SOURCE CODE - 5

Mariane C. Spearman
516 3rd Avenue, Room C203
Seattle Washington, 98104
(206) 477-1647

reliability of software programs for forensic used. A proper validation requires testing samples with known results. These results can then be compared to results generated by the program. A wide variety of samples should be used to simulate real casework type samples to show the limits of the software.

20. Kevin Miller is employed as the Forensic Scientist Leader at Hamilton Robotics. In his Declaration, he testified that he assisted the Kern County Regional Crime Laboratory in California in purchasing and validating TrueAllele for casework in 2014. He testified that DNA analysts are not required to have the computer science or engineering backgrounds required to review source code. Forensic analysts rely on instrumentation to perform a wide array of mathematical calculations without requiring the analysts to check the calculations or know the source code for the procedures.

21. Joanne Sgueglia was previously employed at the Massachusetts State Police Crime Laboratory where TrueAllele was validated in 2011. In her Declaration, Ms. Sgueglia testified that she has been involved in forensic DNA research and development/validation efforts for over 28 years. She testified that knowledge of the source code is not needed to validate TrueAllele. In the field of forensics, labs evaluate and validate many systems by testing without specific knowledge of the underlying mechanisms, programming, algorithms or chemistry.

22. Dr. Gary Shutler is employed as the DNA Technical Leader for the Washington State Patrol Crime Laboratory (WSPCL). In his Declaration, Dr. Shutler testified that the WSPCL does not currently have the funds to do probabilistic genotyping in their laboratory so it contracts with Cybergenetics for interpretation of complex DNA mixtures. Dr. Shutler testified that the WSPCL uses a variety of software technologies in their lab (such as GeneMapper and PopStats) and has never found it necessary to review the source code to establish validation.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION
TO COMPEL TRUEALLELE CASEWORK SOURCE CODE - 6

Mariane C. Spearman
516 3rd Avenue, Room C203
Seattle Washington, 98104
(206) 477-1647

23. Dr. Susan Greenspoon is employed as a Molecular Biologist at the Virginia Department of Forensic Science. In her April 4, 2016, letter, she wrote that the internal validation study performed in her laboratory assessed TrueAllele's accuracy, reproducibility, sensitivity (ability to detect minor contributors) and specificity (ability to eliminate non-contributors) without the need for the source code.

24. The Scientific Working Group on DNA Analysis Methods (SWGDAM) is a group of approximately 50 scientists representing federal, state and local forensic DNA laboratories in the United States and Canada. They meet twice a year and issue documents to provide direction and guidance for the scientific community. The 2015 SWGDAM Guidelines for the Validation of Probabilistic Genotyping Systems do not require or even mention the need for a computer source code for validation.

25. 34 validation studies of TrueAllele have been published. Seven have been published in peer-reviewed journals. Ex 44. None of the validation studies included a review of the source code.

26. Cybergenetics provided the defense with a case report and case packet containing 4 GB of information detailing the testing done in this case. Additionally, Cybergenetics provides defense experts with a 96-day license to use TrueAllele in a read-only viewer and the ability to test their own mixtures using their own data on the TrueAllele on the Cloud at no charge.

**B.     CONCLUSIONS OF LAW**

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION
TO COMPEL TRUEALLELE CASEWORK SOURCE CODE - 7

Mariane C. Spearman
516 3rd Avenue, Room C203
Seattle Washington, 98104
(206) 477-1647

1. The discovery which the defense seeks is not in the State's possession. Dr. Perlin advised the State that Cybergenetics considers the TrueAllele source code to be a trade secret and would not be providing it. CrR 4.7(d).

2. The Court can order the disclosure of materials outside of the required disclosures under CrR 4.7(a), (c), (d), if the information sought is material and the discovery request is reasonable. CrR 4.7(e)(1), *State v. Norby*, 122 Wn.2d 258 (1993).

3. The court can condition or deny disclosure if it finds that there is a substantial risk of harm or unnecessary annoyance resulting from such disclosure which outweighs the usefulness of any disclosure to the defendant. CrR 4.7(e)(2).

4. Materiality requires that the defendant "make a particularized factual showing that information useful to the defense is likely to be found in the records." *State v. Diemel*, 81 Wn.App. 464, 469 (1996).

5. The Defense has not articulated with particularity what material information, if any, could be found by reviewing the source code. As several experts who work in the field of forensic DNA testing have testified, an examination of the source code is not necessary in order to determine the reliability of TrueAllele and validate it for casework.

6. This is not a situation where production of the source code is necessary so that a particular functionality of the software can be examined to see if a patent infringement has occurred.

7. TrueAllele has been validated for use in casework by laboratories in California, Louisiana, Maryland, New York, Ohio, Pennsylvania, South Carolina, Virginia, Northern Ireland and Australia without having access to the source code.

8. The Defense has failed to meet its burden to show that disclosure of the source code is material and reasonable. Based upon the factual findings set forth above, this Court is not

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION
TO COMPEL TRUEALLELE CASEWORK SOURCE CODE - 8

Mariane C. Spearman
516 3rd Avenue, Room C203
Seattle Washington, 98104
(206) 477-1647

persuaded that a review of the source code is necessary in order to determine whether TrueAllele is reliable. The defense demand for the source code is not material or reasonable because the testimony in this case from both state and defense experts establishes that scientists can confirm the reliability of Trueallele without access to the source code. This testimony is consistent with the holding of other courts that have addressed this same issue. *State v. Wakefield*, 47 Misc. 3d 850, 854, 9 N.Y.S.3d 540, 543 (N.Y. Sup. Ct. 2015) ("scientists can, and have, validated the reliability of Cybergenetics TrueAllele Casework even though the source code underlying the process is not available to the public."); *Com. v. Foley*, 38 A.3d 882, 889 (Penn. Sup. Ct. 2012) ("scientists can validate the reliability of a computerized process even if the 'source code' underlying that process is not available to the public.").

9.  Further, the usefulness of disclosing the source code is outweighed by a substantial risk of financial harm to Cybergenetics. Scientists can confirm the reliability of Trueallele without access to the source code. Dr. Perlin and Cybergenetics have a legitimate interest in keeping the source code, a trade secret, confidential.

C. **ORDER**

For the reasons stated above, the defendant's motion to compel the disclosure of TrueAllele's source code is DENIED.

Signed this _____ day of January, 2017.

_____e-filed_____
THE HONORABLE MARIANE SPEARMAN

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION
TO COMPEL TRUEALLELE CASEWORK SOURCE CODE - 9

Mariane C. Spearman
516 3rd Avenue, Room C203
Seattle Washington, 98104
(206) 477-1647

King County Superior Court
Judicial Electronic Signature Page

Case Number: 10-1-09274-5
Case Title: STATE OF WASHINGTON VS FAIR, EMANUEL DEMELVIN AKA
Document Title: ORDER

Signed by: Mariane Spearman
Date: 1/12/2017 2:06:07 PM

Judge/Commissioner: Mariane Spearman

This document is signed in accordance with the provisions in GR 30.
Certificate Hash: 482A410463E582FD4584CC7D9A28D5D713932057
Certificate effective date: 7/29/2013 12:59:26 PM
Certificate expiry date: 7/29/2018 12:59:26 PM
Certificate Issued by: C=US, E=kcscefiling@kingcounty.gov, OU=KCDJA, O=KCDJA, CN="Mariane Spearman:pv5n4Xr44hGCKOA5YYhwmw=="

Page 10 of 10