IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                                )      Criminal No. 19-369<br>)<br>LAFON ELLIS                                       ) | |

**DEFENDANT'S RESPONSE TO ALLEGHENY COUNTY DISTRICT ATTORNEY OFFICE'S MOTION TO QUASH RULE 17 SUBPOENA**

### Introduction

1. At issue is the propriety of the Defense's Rule 17(c) subpoena *duces tecum* to the Allegheny County District Attorney's Office ("DA's Office" or "DA") in an effort to get information in the DA's possession which is relevant, admissible, and specific to a forthcoming motion to exclude TrueAllele results.[1]

2. On April 20, 2020, the Defense filed the Rule 17(c) subpoena *duces tecum* requesting this information. On April 21, 2020, this Court granted the request issuing a Sealed Order.

3. On May 5, 2020, the Defense served the subpoena and a schedule of documents to be produced on the DA's Office.

4. The DA's Office has now filed a motion to quash the subpoena. While the Defense concedes that some modification of its subpoena is appropriate, for the reasons explained in this response, the DA's motion to quash should otherwise be denied.

### I.     Argument

In its brief in support of its motion to quash the Defense's subpoena, the DA asserts three general reasons why this Court should grant its motion. First, complying with the subpoena would

---

[1] For the sake of economy, the Defense's factual averments regarding TrueAllele and its parent company, Cybergenetics, as previously set forth are incorporated here by reference. *See* Docket Nos. 45, 71.

be "unduly burdensome and oppressive" because any effort and expense borne by the DA in producing the requested evidence would be duplicative of the U.S. Attorney Office's obligations under the Jencks Act, *Brady*, and Rule 16 discovery. DA Brief at 3-6. Second, the evidence requested is privileged. *Id.* at 6-14. And finally, an **ex parte** subpoena is not appropriate in this case. *Id.* at 14-15. For the reasons described below, and with the exception of that evidence the Defense agrees is privileged, the Court should reject the DA's arguments and deny the motion to quash with respect to the Defense's requests regarding TrueAllele or Cybergenetics and the murder of Jimmy Wopo.

    **A. Notwithstanding the DA's conclusory assertions to the contrary, the Defense's subpoena is not unduly unreasonable or oppressive.**

In fine, the DA argues that compliance with the Defense's subpoena would be unduly unreasonable or oppressive because such compliance would violate Rules 17(c)(2), 17(h), 26.2, and the Jencks Act. The Court should reject the DA's arguments as conclusory, unsubstantiated, and otherwise contrary to the law.

- **Rule 17(c)(2)**

Regarding Rule 17(c)(2), the DA asserts that the Defense's subpoena "creates undue burden and expense . . . because it will require unnecessary, duplicate effort from the DA's office in order to produce evidence that, to the extent any of it is relevant, the Defendant will ultimately receive pursuant to the Jencks Act and Brady, and through Rule 16 discovery from the U.S. Attorney's Office." DA Brief at 4. "[I]t is hard to conceive," the DA continues, "of a more broad, burdensome and oppressive subpoena than the one served on the DA's Office by Mr. Ellis." *Id.* at 5. Such is the substance of this part of the DA's argument for, other than citing some case law that describes the limits of Rule 17(c)(2) subpoenas, the DA fails to explain how or why any particular

Defense request is overbroad, inconsistent with Rule 17(c)(2) or the cited case law, much less how either or both make(s) the subpoena unduly burdensome and oppressive. *Id.* at 3-6.

In other words, the DA's arguments here are no more than conclusory assertions. Yet as the movant, the DA has the burden, *see Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("The moving party has the burden of proof to demonstrate that compliance with the subpoena would be 'unreasonable and oppressive.'"), and that burden is not a trivial one, *see In re Actiq Sales and Mktg. Practices Litig.*, 07-CV-4492 PBT, 2011 WL 5509434, at *2 (W.D. Pa. Nov. 10, 2011) (Conti, J.) ("A party seeking to quash a subpoena bears a heavy burden of proof."); *In re Grand Jury Proceedings*, 914 F.2d 1372, 1374 (9th Cir. 1990) (party bears "heavy burden" when it seeks to quash subpoena). What is hard to conceive of, then, is how merely parroting the language of Rule 17(c)(2) and some case law without applying either to the specifics of this case shoulders that burden.

To the extent the DA relies on the U.S. Attorney's Rule 16 obligations, such reliance is misplaced precisely because that Rule does not apply *to the DA*. Quoting without comment or development from the Third Circuit's decision in *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980), the DA appears to suggest that the Defense's subpoena is an attempt to use Rule 17(c) as an end-run around or substitute for Rule 16: "'Courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16.'" DA Brief at 4. But, Rule 16 does not address a defendant's right to discovery from *non-parties* such as the DA is in this case. "The notion that because Rule 16 provides for discovery, Rule 17(c) has no role in the discovery of documents can, of course, only apply to the documents in the government's hands; accordingly, Rule 17(c) may

well be a proper device for discovering documents in the hands of third parties." *United States v. Tomison*, 969 F. Supp. 587, 593 n.14 (E.D. Cal. 1997).

Were the government's Rule 16 obligations here sufficient to preclude the Defense from seeking evidence under Rule 17(c) from third parties such as the DA, "the government could prevent defendants from obtaining material by choosing not to obtain it for itself. This perverse result cannot be intended by the Federal Rules of Criminal Procedure." *United States v. Tucker*, 249 F.R.D. 58, 65 (S.D. N.Y. 2008), *as amended* (Feb. 20, 2008). Put differently, contrary to the DA's apparent representations, seeking production of evidence from third or non-parties to whom Rule 16 does not apply is just the sort of thing that Rule 17(c) was intended to facilitate. *See United States v. King*, 194 F.R.D. 569, 573 n.3 (E.D. Va. 2000) (noting that although courts must "prevent Rule 17(c) from being improperly used as a discovery alternative to Fed. R. Crim. P. 16 . . . where, as here, the subpoena is directed to a third party, that precise problem is not presented because Rule 16 regulates the discovery obligations of the United States and the defendant, and does not address how [either party] may secure evidence in the possession of third-parties") (internal citation omitted).

- **Rules 17(h) and 26.2**, Jencks Act

Essentially reading Rules 17(h) and 26.2 together with the Jencks Act, the DA also accuses the Defense of "clearly" attempting both to subvert the Rules with respect to witness statements and to "subvert and prejudice the right of the U.S. Attorney's Office to determine what witnesses it wishes to use on direct by seeking Jencks Act materials from the DA's Office in total derogation of the Jencks Act and . . . Third Circuit caselaw." DA Brief at 5-6. With regard to the latter, the DA relies in particular on the Third Circuit's decision in *United States v. Murphy*, 569 F.2d 771,

4

773 (3d Cir. 1972), for the proposition that "district courts cannot compel production of Jencks material prior to a witness testifying on direct examination." DA Brief at 6.

The Court should reject these arguments because they are simply contrary to the law where, as here, what is sought is pre-trial production of potential impeachment material with respect to a witness who is certain to testify at trial (*i.e.*, Cybergenetics). As one court has explained, if the rationale for not allowing subpoenas to be used solely for impeachment materials is that materials become evidentiary only when, and if, a witness testifies, then "[i]t follows . . . that where it is known with certainty before trial that the witness will be called to testify, the admissibility determination . . . can be made before trial, and the statements properly may be considered evidentiary." *United States v. King*, 194 F.R.D. 569 574 (E.D. Va. 2000). *See also United States v. LaRouche Campaign,* 841 F.2d 1176, 1179 (1st Cir. 1988); *United States. v. Shinderman,* 432 F. Supp. 2d 157, 160 (D. Me. 2006); *United States v. Libby,* 432 F. Supp. 2d 26, 42-43 (D.D.C. 2006) (ordering pre-trial production of impeachment materials where witness would "inevitably" testify at trial); *United States v. Liddy,* 354 F. Supp. 208, 209-12 (D.D.C. 1972) (granting pre-trial motion for Rule 17(c) subpoena for impeachment materials related to testimony of "a key Government witness"); *see also United States v. Ball, 1999* WL 974028 (D. Kan. Aug. 11, 1999) (ordering production of subpoenaed materials as relevant and admissible as impeachment evidence if relevant witness testified, as was anticipated).

Further, "Rule 17 is not limited to subpoenas for . . . trial," but may be issued "for determination of an issue of fact raised by a pre-trial motion." Wright & Miller, 2 Fed. Prac. & Proc. Crim. § 272. Here, as this Court is well aware, the Defense is contesting the admissibility of a Cybergenetics report and testimony based upon it. That report links Mr. Ellis to DNA taken from a gun. After receiving forensic data from the Commonwealth, Cybergenetics generated this report

5

after running that data through its TrueAllele software program. The government wants to admit TrueAllele's findings. The Defense believes that TrueAllele should be subject to a *Daubert* analysis. Thus, there will be an issue of fact for this Court to consider as to whether TrueAllele's purported conclusion is admissible and the information regarding TrueAllele and Cybergenetics at issue here is therefore a proper target of the Defense's Rule 17(c) subpoena.

### B. Privilege

To the extent the DA asserts privilege under the work-product and deliberative process doctrines as to certain information requested by the subpoena, including communication amongst the DA's staff and between its staff and the Federal government, the Defense recognizes the privilege as to that information and no longer seeks its production. It therefore respectfully requests that the Court modify the subpoena accordingly. *See* DA Exhibit E (attached to DA Brief). For the reasons described below, however, the Defense does not agree that all of the evidence for which the DA asserts privilege is actually privileged and therefore continues to seek its production. Specifically, the Defense continues to seek the information requested regarding Cybergenetics and TrueAllele and regarding the murder of Jimmy Wopo.

- **Cybergenetics and TrueAllele**

Although the DA asserts that communication between the DA's Office and Cybergenetics is protected work-product, *see* DA Exhibit E (attached to DA Brief), the Defense believes that not all of the information requested in the subpoena is work-product. For example, the Defense has requested any non-disclosure agreement between the DA's Office and Cybergenetics related to the use of TrueAllele. Rather than being work-product, any such agreement would be a "record kept in the course of a regularly conducted activity of a business[.]" Fed. R. Evid. 803(6)(B). *See also Stryker Corp. v. Ridgeway*, 2015 WL 5682317 (W.D. Mich. Sept. 21, 2015) (addressing

admissibility of nondisclosure agreement under FRE 803(6)). Indeed, it is unclear whether the DA's Office even has an agreement with Cybergenetics that addresses TrueAllele's source code as it appears to contract with Cybergenetics on an *ad hoc* or case-by-case basis. *See* Paula Reed Ward, *Allegheny County paying double for DNA analysis program*, Pittsburgh Post-Gazette (Aug. 28, 2016, 12:00 AM), https://www.post-gazette.com/local/city/2016/08/28/Allegheny-County-paying-double-for-DNA-analysis-program-TrueAllele/stories/201608280062 (explaining that DA's Office must contract with Cybergenetics on case-by-case basis because, although Allegheny County purchased TrueAllele for crime lab use, lab has declined to use TrueAllele based on concerns regarding "the program's complexity, its general acceptance in the scientific community and reproducibility of results").

- **Jimmy Wopo**

The DA insists that its Office's "interest in ensuring the secrecy of the materials in question [regarding Jimmy Wopo] is paramount, while the need of the adverse party [Mr. Ellis] to obtain the information is nonexistent." DA Brief at 13. "Mr. Ellis is not being prosecuted for the murder of Jimmy Wopo," the DA goes on, and "[i]nformation . . . in reference to the murder . . . as it relates to Mr. Ellis [does] not appear to be relevant to the charges against him" before this Court. *Id.* at 14. Setting aside the fact that it is not for the DA to determine the relevance of anything here, the Defense believes the information requested is relevant to Mr. Ellis' case.

Specifically, the CAD report documenting events leading up to Mr. Ellis' arrest establishes that police began following and then pursuing a black Kia identifying the driver as a "POSS[IBLE] HOMICIDE SUS[PECT]." Exhibit A at 7 (capitals in original). During a subsequent foot chase, it was noted that Mr. Ellis was allegedly "SEEN GRIPPING HIS WAIST BAND/HE IS CODE 5 FOR HOMICIDE." *Id.* at 5 (capitals in original). In addition, based on undersigned counsel's

communication with the Assistant U.S. Attorney in this case, the Defense believes that the homicide mentioned in the CAD report involved Jimmy Wopo and that Mr. Ellis is somehow involved.

Thus, contrary to the DA's assertions, the murder of Jimmy Wopo is relevant to Mr. Ellis' case as being a reason why there was a reason to be on the lookout for either the vehicle or the driver, who they allege is Mr. Ellis. It is unclear why the government chose to adopt Mr. Ellis' state court case on the eve of trial, but it is clear that the Assistant U.S. Attorney in this case believes Mr. Ellis either knows something of the Jimmy Wopo murder and so did the officers who initially were on the lookout for the black Kia. To be clear, the Defense therefore continues to request the production of information regarding Jimmy Wopo's murder, but only to the extent that it involves Mr. Ellis.[2] This information should include why they were looking for the black Kia in the first place and why they believe a "possible homicide suspect" was in the vehicle before even being able to identify who the driver of the vehicle was. For this Court's reference, the black Kia does not belong to Mr. Ellis, nor were materials found in that car linking Mr. Ellis to the car in any way.[3] Insofar as the DA argues that production would nonetheless be "inappropriate and cause undue burden expense," because there is "nothing that would be exculpatory of Mr. Ellis in respect to his prosecution before this Court," the DA's rationale presupposes that the DA somehow knows what Mr. Ellis' theory of defense is and the Court should therefore reject the DA's arguments. At the very least, the Defense respectfully requests that the Court order production of the requested information and conduct *in camera* review before deciding whether Defense review is warranted.

---

[2] The defense therefore also respectfully requests that the Court modify the subpoena accordingly.
[3] Other than the alleged DNA on the gun based on TrueAllele results.

**C. Contrary to the government's arguments, *ex parte* applications for pretrial production of Rule 17(c) subpoenas are proper and do not serve as a basis to quash a subpoena.**

The DA argues that "there is no cause whatsoever, much less extraordinary circumstances, supporting the *ex parte* subpoena in this matter." DA Brief at 15. That is not a valid reason to quash a subpoena where, as explained above, the DA has otherwise failed to demonstrate that the Defense's subpoena is unduly unreasonable or oppressive. *See United States v. Nixon*, 418 U.S. 683, 698 (subpoena may be quashed if "'unreasonable or oppressive,' but not otherwise"). In other words, the mere fact alone that something has been filed *ex parte* does not make it unreasonable or oppressive, and the DA has failed to demonstrate or explain otherwise. Indeed, many courts have held a party may make an *ex parte* application for a pretrial subpoena duces tecum.[4]

Moreover, and critically, to the extent the DA relies on the decision in *United States v. Stewart*, 1997 U.S. Dist. LEXIS 2444, at *5 (E.D. Pa. Mar. 4, 1997) for the proposition that Rule 17(c) "does not permit ex parte subpoenas," DA Brief at 15, the DA omits that the dispositive factor in *Stewart* was the fact that both parties would have equal access to the subpoena documents. Under such circumstances, "where both parties will be inspecting the material received pursuant to the subpoena, 'it would make no sense to have an *ex parte* proceeding.'" *Id.* (quoting *United*

---

[4] *See e.g.*, *United States v. Daniels*, 95 F.Supp.2d 1160, 1162-63 (D. Kan. 2000); *United States v. Tomison*, 969 F.Supp. 587, 589-95 (E.D. Cal. 1997); *United States v. Beckford*, 964 F. Supp. 1010, 1029 (E.D. Va. 1997); *United States v. Vigil*, CR 10-2310 JB, 2013 WL 3270995, at *8- 9 (D. N.M. June 3, 2013); *United States. v. Sellers*, 275 F.R.D. 620, 625 (D. Nev. 2011); *United States v. Stewart*, CRIM.A. 96-583, 1997 WL 103700, at *2 (E.D. Pa. Mar. 4, 1997); *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D. N.Y.1995); Wright & Miller, § 275 Production of Documentary Evidence and Objects—Trial Subpoenas, 2 Fed. Prac. & Proc. Crim. § 275 (4th ed.) ("[B]oth the government and a defendant may make an ex parte application for a pre-trial subpoena duces tecum."; *see also United States v. Kravetz*, 706 F.3d 47, 53 n.4 (1st Cir. 2013) ("The text of Rule 17(c) does not expressly prohibit ex parte requests for subpoenas, and courts have found them to be permissible."

9

*States v. Reyes*, 162 F.R.D. 468, 470 n.2 (S.D. N.Y. 1995)). The *Stewart* decision, then, contrary to the DA's representations, simply does not stand for the brightline notion that Rule 17(c) "does not support ex parte subpoenas," and the Court should reject this argument as unpersuasive.

Thus, *ex parte* applications for pretrial production of Rule 17(c) subpoenas are proper rather than a valid basis to quash a subpoena, and the Court should reject the DA Office's arguments to the contrary.

## II. Conclusion

For all the reasons set forth above, Mr. Ellis asks this Court to deny the DA's Office motion to quash the subpoena, modify the subpoena with the modifications suggested by the Defense in this response, and Order the DA's Office to comply with the subpoena so that Mr. Ellis's expert can start reviewing the requested materials.

Respectfully Submitted,

/s/ *Khasha Attaran*
Khasha Attaran
Assistant Federal Public Defender
