IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | ) 19-369 |
| v. | ) |
| LAFON ELLIS | |

**OPINION AND ORDER**

**SYNOPSIS**

Defendant has filed a Motion to Compel Production of Specified Discovery Items [97] and a Motion to Compel Production of Software Verification Materials [83]. The Government has filed an Omnibus Response [108]. In brief, this case involves events that occurred on August 21, 2018. According to the Government, police were on the lookout for a car involved in a homicide, spotted the car, and attempted to stop it. Following a chase, the car crashed, and the driver and sole occupant fled on foot; he was not apprehended. A search of the car revealed a firearm. The Government avers that Defendant was the driver, and that his DNA appeared on the firearm. Defendant is charged with one Count of felon in possession.

For the following reasons, Defendants' Motion to Compel Production of Software Verification Materials will be denied, and the Motion to Compel Production of Specified Discovery Items will be granted in part and denied in part.

**OPINION**

**A. Motion to Compel Production of Software Materials**

Defendant's Motion to Compel relates to a broad swath of information pertaining to Cybergenetics and TrueAllele, including personnel information, security protections, and internal software development processes. According to Defendant, he made a specific request to the Government, by letter, for various information relating to testing the reliability of TrueAllele. In

1

an e-mail response to defense counsel, the Government indicated that it believed it had already sent all information, but that its file was open for Defendant's review.  In its response to Defendant's Motion, the Government likewise asserts that it has provided or made available to Defendant all discoverable evidence in its possession, which includes materials from the Allegheny County District Attorney's Office and a DVD from Cybergenetics including case-specific information, tutorials, and links to validation studies.  The Government reaffirms its intention to comply with its discovery obligations under Brady and Rule 16, at present and on a continuing basis.  Defendant claims that a long and varied list of items remain outstanding, such as software development and operating materials, products of validation study efforts, and proof of appropriate security protections.  Assuming, for present purposes, that Defendant is entitled to those materials, he does not suggest that they lie within the Government's actual possession.  A court cannot compel the production of evidence from a party who attests that it does not possess that evidence. At this juncture, the Court must accept the Government's representations of compliance.

Defendant argues, however, that the Government has an obligation to seek out and obtain the identified materials from Cybergenetics, or that the Government should be deemed to constructively possess the identified materials potentially in Cybergenetic's possession.  This line of argument rests on Defendant's contention that Cybergenetics is acting on behalf of the Government in this case.  Defendant cites to Kyles v. Whitley, 514 U.S. 419, 438, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995), which refers to the Government's burden under Brady to "learn of any favorable evidence known to others acting on [its] behalf in the case…."  Defendant, consistent with caselaw interpreting Whitley as applying to the "prosecution team," asserts that Cybergenetics is part of the prosecution team in this case.

In making the pertinent assessment, the Court considers, on a case-by-case basis, "whether the party with knowledge of the information is acting on the government's 'behalf' or is under its 'control'"; "the extent to which state and federal governments are part of a 'team,' are participating in a 'joint investigation' or are sharing resources"; and "whether the entity charged with constructive possession has 'ready access' to the evidence." United States v. Risha, 445 F.3d 298, 304 (3d Cir. 2006).[1]  Our Court of Appeals has indicated that the prosecution team includes investigative and prosecutorial personnel, including police officers. United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991).  It does not include those who have not "engaged in a joint investigation or otherwise shared labor and resources." United States v. Pelullo, 399 F.3d 197, 218 (3d Cir. 2005).

As another court has explained, "[i]ndividuals who perform investigative duties or make strategic decisions about the prosecution of the case are considered members of the prosecution team, as are police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation." United States v. Barcelo, 628 F. App'x 36, 38 (2d Cir. 2015). "[T]he relevant inquiry is what the person did, not who the person is." United States v. Stewart, 433 F.3d 273, 298 (2d Cir. 2006).  Thus, an expert witness, not involved with investigation or prosecutorial strategy, has not been considered part of the prosecution team.  See id. at 298-99.

The Government submits that Cybergenetics' role in this case is to provide the Government with a product: its DNA testing and analysis. Defendant describes the Government's relationship to Cybergenetics as one of "employer," with the ability to request a variety of information from Cybergenetics.  There is no suggestion, however, that Cybergenetics should be considered under the Government's control, or that it submits to the Government's

---

[1] While Risha arose in the context of the materials in possession of a state agency at issue in that case, its factors inform the present discussion.

direction, as contemplated by applicable standards. Likewise, there is no suggestion that Cybergenetics participated in a joint investigation with the Government, or that the Government has ready access to the long list of materials that Defendant seeks. Defendant avers that Cybergenetics provided the Government with "litigation materials" such as "motions and opinions from other jurisdictions to help litigate legal issues." The Court notes that pertinent legal opinions are posted on Cybergenetics' public website, and that motions and court opinions are typically available to the public from a variety of sources. In any event, assuming that Cybergenetics provided the Government with such materials, this fact neither suggests nor establishes that Cybergenetics is involved in making decisions about prosecutorial strategy. In sum, the record offers no basis to conclude that Cybergenetics has done anything other than "acted only in the capacity of an expert witness… and not as a 'fully functioning member of the prosecution team.'" Id. at 299. Defendant's Motion will be denied.[2]

### B. Motion to Compel Production of Specified Discovery Items

#### a. Materials Sought

Defendant moves to compel the production of a variety of identified materials. Although Defendant's Motion does not number the items requested, they are numbered herein for ease of reference. The numbers correspond to the order in which Defendant addresses the evidence.

1. Recorded jail phone calls of Defendant, referenced in Officer Fallert's supplemental reports.
2. A. Gray hoodie found in the City View Apartments parking garage, alleged to have been worn by the person who drove the car.

    B. Fingerprints from Defendant, and from inside the car.

---

[2] The extent of Cybergenetics' obligations with respect to respond to the subpoena issued to it remains pending, until resolution of the Government's Motion to Quash the subpoena.

    C. The Black Kia Sorrento involved in the case.

    D. Photographs taken by Pittsburgh license plate reader cameras between June 13-21, 2018, which allegedly show the car and are referenced in Officer Fallert's supplemental report.

    E. Photographs taken of the vehicle that was observed in surveillance footage, also referenced in Officer Fallert's supplemental report "in re 'Identification of Suspect Vehicle and Tie to Suspect Lafon Ellis.'"

    F. Photographs of the vehicle observed by Officer Fallert that he believed to be photographs of a vehicle involved in the Travon Smart homicide that occurred on June 13, 2018.

    G. The dispatch audio call of Hasna Brown reporting her vehicle stolen.

    H. Training, certification logs, and other records regarding the drug dog "Dodo."

    I. Prior police reports involving Defendant and Officer Mammarelli.

    J. Video recordings from Knoedler parking lot where Ms. Brown stated she last saw her car.

3. Various records from the County of Allegheny Office of the Medical Examiner, including biological case testing file, chain of custody information, data files, laboratory protocols, accreditation, and information about laboratory personnel, including resume and proficiency test results.

4. Computer aided dispatch identifiers.

5. DNA and identification of other potential suspects.

    **b. Nos. 1, 2B, 2C, 2G, 2H, 2I, 2J, 4, and 5**

Defendant's Motion is moot as to the following items, which the Government states that it has provided or will provide the materials in its possession, Defendant may access the materials, or the materials are unavailable because they were not retained or otherwise: 1, 2B, 2C, 2G, 2J, 4, and 5.[3] Defendant's Motion is denied as to the prior police reports identified in 2I, as he has not demonstrated that early access to Jencks Act material is warranted. The Motion is denied as to the drug dog records identified in 2H. Unlike the cases to which he cites in support of discovering the records, the present matter does not relate to any drug crime, and there is no indication that any aspect of the case against Defendant rested on the dog search. The requested evidence does not appear to fall within the Government's disclosure obligations.

### c. No. 3

Defendant premises his request for item number 3, which encompasses various materials from the Allegheny County Medical Examiner, on Fed. R. Crim. P. (a)(1)(E), (F), and (G). Those Rules require the Government to "permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if [inter alia] the item is within the government's possession, custody, or control," "permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if [inter alia]…the item is within the government's possession, custody, or control," and to produce a "written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."

The Government asserts that it has made all of the discoverable materials in its possession available for Defendant's inspection, including materials from the Allegheny County District Attorney's Office. In a Notice filed on October 19, 2020, the Government stated that it

---

[3] Defendant does not challenge the Government's assertion that Knoedler video is unavailable.

possessed and would make available to Defendant "all documents not privileged or otherwise excluded from production in [the DA's] file of Commonwealth of Pennsylvania v. Lafon Ellis, OTN No. G816773-6." The Court accepts the Government's representation, as well as its consistent acknowledgement of its current and continuing disclosure duties. Defendant's Reply fleshes out the relevance and materiality of the evidence, but not the more basic issues of the Government's Rule 16 obligations and inability to produce what it does not possess. At this juncture, Defendant's Motion is denied as to the items encompassed in Number 3.

### d. Numbers 2D, 2E, and 2F

The Government asserts that the photographs of the vehicle identified in item numbers 2D, 2E, and 2F are not discoverable because they "relate to the ongoing homicide investigation and are not discoverable in this case." By Order dated October 8, 2020 ("October 8 Order"), ruling on the Allegheny County District Attorney's ("DA") Motion to Quash a subpoena issued to it, I determined that the DA need not produce "Information, emails, notes, in reference to Lafon Devon Ellis and the murder of Jimmy Wopo." In so doing, I noted that "The connection between officers' reasons for looking out for the vehicle and the present charges against Defendant are… tenuous at this point."[4] Subsequently, the Government sought clarification of that Order. By Order dated October 15, 2020 ("October 15 Order"), I stated as follows: "The Government seeks a ruling that information related to any matter or defendant other than the instant matter is not discoverable in this case. I decline to issue such a broad ruling, as my October 8 Order related only to Paragraph 6 of the subpoena and its reference to Jimmy Wopo." Accordingly, I clarified that the Government, in its disclosures, need not produce "Information, emails, notes, in reference to Lafon Devon Ellis and the murder of Jimmy Wopo." In other

---

[4] In connection with the subpoena to the DA, Defendant sought information regarding Mr. Wopo's murder because it pertained to "why there was a reason to be on the lookout for either the vehicle or the driver, who they allege is Mr. Ellis."

7

words, this Court declined to issue any ruling beyond the October 8 Order as it related to the particular Paragraph of the subpoena as it related to the murder of Jimmy Wopo.

The Government has not established that this particular evidence, which appears pertinent to this case, is shielded from disclosure merely because it also "relates to" an ongoing homicide investigation. The Government does not assert that production of the photographs here would hamper any ongoing investigation or eventual homicide prosecution, and has not made any particularized assertion of the need for secrecy. No such potential harm or need is apparent to the Court, and the fact that the photographs exist is a matter of public record.

At the same time, the Court must accept the Government's assertion that it has complied and will comply with its disclosure obligations under case law and procedural rules. To the extent that the Government possesses photographs that fall within those obligations, that were withheld based on a belief that this Court's October 8 and October 15 Orders precluded production thereof, the Government shall produce or make the photographs available to Defendant within two weeks of the date of this Order. If the Government does not possess the requested photographs, it shall so apprise Defendant within that time frame.

### e. No. 1A

Finally, the Government asserts that item 1A, the gray hoodie, is "not available." Defendant objects that the item was photographed and logged into evidence, and questions why it is "not available." If the hoodie is simply not in the Government's possession, the Government shall so apprise Defendant within two weeks of the date of this Order. Absent further information, the Court is without information sufficient to allow evaluation of the propriety of compelling production of this piece of evidence.

## CONCLUSION

Defendant's Motion to Compel Production of Specified Evidence is denied in part and granted in part, to the extent stated supra.  The remainder of that Motion, and the Motion to Compel Production of Software Verification Materials, is denied.  The parties are strongly encouraged to engage in meaningful discussion regarding the possession and exchange of evidence.  It is apparent that several aspects of Defendant's Motions could have been resolved between the parties without Court intervention.

BY THE COURT:

*Donetta F. Ambrose*
_____

Donetta W. Ambrose
Senior Judge, U.S. District Court

Dated:  December 3, 2020

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES                    ) 19-369
                                 )
    v.

LAFON ELLIS

**ORDER**

AND NOW, this 3rd day of December, 2020, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Compel Production of Specified Evidence is denied in part and granted in part, as stated in the body of the Opinion. The remainder of that Motion, and the Motion to Compel Production of Software Verification Materials, is denied.

                                                  BY THE COURT:

                                                  _____

                                                  Donetta W. Ambrose
                                                  Senior Judge, U.S. District Court