**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES                                   )   19-369
                                                )
          v.                                    )

LAFON ELLIS

**OPINION AND ORDER**

**SYNOPSIS**

In this action, Defendant was indicted on one Count of being a felon in possession of a

firearm and ammunition, in violation of 18 U.S.C. § 922(g).  Presently, the Government has filed

a Motion to Quash a subpoena issued to Cybergenetics, its expert witness.

By way of background, the Government asserts that on August 21, 2018, Pittsburgh

Police spotted a vehicle that had allegedly been involved in a homicide. Following a chase, the

sole occupant and driver of the car fled on foot; the police did not catch him.  A search of the car

revealed a firearm on the driver's side. DNA testing, conducted by Cybergenetics using its

TrueAllele software, revealed Defendant's DNA on the firearm.

Defendant filed a sealed, ex parte Motion seeking the issuance of a Subpoena to

Cybergenetics, which the Court signed [33].  The Subpoena was later amended, also under seal.

[35, 36].  Cybergenetics subsequently advised the Government that it had received the Subpoena.

The Government sought, and the Court granted, service of the Subpoena.  The pending Motion to

Quash the subpoena followed. [47].  Defendant has responded. [71, 121].  In addition, Defendant

has also adopted the arguments set forth in the amicus curiae brief filed by Electronic Frontier

Foundation ("EFF"). [78].  The Government has filed a Supplement that addresses

Cybergenetics' source code.  [131].

1

The Government objects to the Subpoena on several grounds, including that it seeks information excluded from production under Fed. R. Crim. P. 17, and that it is inconsistent with the expert disclosures contemplated by Fed. R. Crim. P. 16.  EFF, in its amicus brief, contends that Defendant has the right, under principles of due process and confrontation, to review Cybergenetics' source code.  Defendant suggests that he requires the materials sought in order to challenge TrueAllele under Daubert, which tests the reliability and validity of scientific evidence.  Specifically, Defendant states his desire to "get software verification and validation materials which are relevant, admissible, and specific for a forthcoming motion to exclude TrueAllele results."  Defendant further asserts that at issue is whether "the software makes appropriate assumptions and … was developed in a way that makes it scientifically valid and reliable (or not)."  Thus, the thrust of Defendant's argument is toward the verification and validation of the TrueAllele software or algorithm, or its foundational validity.

Defendant has agreed to modify the subpoena to exclude statements of witnesses or prospective witnesses; change the disclosure deadline from two to four weeks; require production of the materials to the Court, rather than to the defense, which then will have the discretion to allow the parties to inspect the materials.  Defendant has further agreed to modify the Subpoena to seek only as-yet unproduced documents identified in Paragraph 23 of his Response to the Motion to Quash [71].  Upon comparison of Paragraph 23 of Defendant's Response and the Amended Subpoena Schedule, this agreement appears to encompass the modification of the Subpoena to exclude all Paragraphs of the Subpoena except the following: 5)2a-c, e-j, and l-o; 5)3; 5)4; and 6)a-c, e, g, j, k, n, o, and q.[1]  The Court will proceed to consider the Subpoena as though it has been thus modified.

---

[1] All references herein to the Paragraphs of the Subpoena correlate with those in the Amended Subpoena Schedule attached as Exhibit 2 to Defendant's Response to the Motion to Quash. [71].

**OPINION**

### I.     STANDING

As a threshold matter, Defendant objects to the Government's standing to challenge the subpoena to Cybergenetics.

For several reasons, the Court will address the substance of the Government's Motion. First, the Government has a legitimate interest in preventing Defendant from using a subpoena to obtain materials that would otherwise be protected from disclosure. See United States v. Louis, No. 4-203, 2005 U.S. Dist. LEXIS 1087, at *5 (S.D.N.Y. Jan. 27, 2005).  Second, "regardless of the parties' standing, the Court has an independent duty to review the propriety of the subpoena - a duty in this case that requires the Court to consider whether the documents sought are privileged and whether the subpoena itself comports with the requirements of Rule 17." See United States v. Khan, No. 6-355, 2009 U.S. Dist. LEXIS 8692, at *6 (E.D.N.Y. Jan. 20, 2009). Thus, "[t]he government's standing to object has no effect on the court's obligations under Rule 17." United States v. Modi, No. 01-00050, 2002 U.S. Dist. LEXIS 1965, at **5-6 (W.D. Va. Feb. 4, 2002). In assuming without deciding that a party had standing to challenge a subpoena issued to its expert, one Court considered the issue of delay: "[Absent the assumption], the Court would be compelled to extend deadlines to allow the individual experts to obtain counsel to object to any disclosure, and the experts may have relied upon defense counsel to object on their behalf." United States v. Hardy, No. 94-381, 2009 U.S. Dist. LEXIS 34937, at *1-2 (E.D. La. Apr. 2, 2009).  In the context of this case and the subpoena-related disputes that have arisen to date, the Government's Motion will not be denied for lack of standing.

## II.     MOTION TO QUASH

### a.   Applicable Standards

On a motion to quash, the moving party bears the burden of demonstrating that compliance with the subpoena would be unreasonable and oppressive.  Nye v. Ingersoll Rand Co., 2011 U.S. Dist. LEXIS 7383, at *18 (D.N.J. Jan. 25, 2011).  When considering whether compliance would be unreasonable and oppressive, the Court considers factors such as relevance, the breadth of the request for the production; the particularity with which the documents are described, and the party's need for the production. Id. at *19.

The considerations applicable to a motion to quash dovetail with those that apply in the context of a subpoena's initial issuance. Assessment of the latter is appropriate when evaluating a motion to quash a subpoena, particularly one issued ex parte. See United States v. Brashear, No. 11-0062, 2013 U.S. Dist. LEXIS 163865, at *6 (M.D. Pa. Nov. 18, 2013); United States v. Thompson, 310 F.R.D. 542, 545 (S.D. Fla. 2015).

To obtain production prior to trial from a third-party witness under Rule 17(c), the party seeking production bears the initial burden.  United States v. Smukler, No. 17-563, 2018 U.S. Dist. LEXIS 127320, at *6 (E.D. Pa. July 30, 2018).  To meet its burden, the party must demonstrate:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that  the application is made in good faith and is not intended as a general "fishing expedition."

United States v. Nixon, 418 U.S. 683, 699-700, 94 S. Ct. 3090, 3103 (1974).[2]

---

[2] Defendant urges this Court to apply a standard less stringent than Nixon.  Although Nixon as applied to third-party subpoenae is not without controversy, courts within this Circuit have declined to adopt a less stringent standard. See,

Nixon's factors reflect the principle that Rule 17(c) is not supposed to provide a discovery device in criminal cases. United States v. Grass, No. 02-146, 2003 U.S. Dist. LEXIS 5195, at *7 (M.D. Pa. Feb. 12, 2003). Otherwise stated, "Rule 17(c) is not the criminal law's analogue to Rule 26 of the Federal Rules of Civil Procedure which allows wide ranging discovery in civil cases." United States v. Stewart, No. 96-583, 1997 U.S. Dist. LEXIS 3238, at *5 (E.D. Pa. Mar. 19, 1997). Instead, the Rule is a means to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." Nixon, 418 U.S. at 698-99. It is thus designed to address the presence of "particular documents or sharply defined categories of documents." United States v. Crosland, 821 F. Supp. 1123, 1129 (E.D. Va. 1993). "The test for enforcement is whether a subpoena constitutes a good faith effort to obtain identified evidence rather than amounting to a general 'fishing expedition' that attempts to use the rule as a discovery device." United States v. Cuthbertson, 630 F.2d 139, 144 (3d Cir. 1980) (citations omitted). A Court may modify or quash a noncompliant subpoena. United States v. Mendinueta-Ibarro, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013).

While Rule 17(c) does not set forth demarcating lines, caselaw provides guidance about the required specificity and when a request crosses over into the realm of impermissible discovery. It is clear that a movant cannot satisfy the Nixon test through speculation or hope about what the requested information will reveal.[3] United States v. Indivior Inc., No. 19-16, 2020 U.S. Dist. LEXIS 22586, at *12 (W.D. Va. Feb. 10, 2020). Further, the use of the phrases "entire files," "all," "any and all," or "including but not limited to" suggests a disallowed fishing expedition. Mendinueta-Ibarro, 956 F. Supp. 2d at 513; United States v. Mariano, No. 12-061,

---

e.g., United States v. Onyenso, No. 12-602, 2013 U.S. Dist. LEXIS 134719, at *5 (D.N.J. Sep. 20, 2013). Absent clear guidance from our Court of Appeals, I do likewise.

[3] Some Courts have required movants to proffer details such as the dates the documents sought were created, their contents, and their authors. See United States v. Skelos, No. 15-317, 2018 U.S. Dist. LEXIS 83480, at *3-4 (S.D.N.Y. May 17, 2018).

2013 U.S. Dist. LEXIS 31333, at *1 (D.R.I. Mar. 7, 2013); see also United States v. Blumberg,

No. 14-458, 2017 U.S. Dist. LEXIS 175542, at *15 (D.N.J. Oct. 20, 2017).  As one Court has

stated, "where the party seeking the subpoena can describe the material sought only in broad

terms or is unsure whether the material even exists, and where the claim of relevance is

necessarily speculative, the request is likely to be denied."  United States v. Grace, 434 F. Supp.

2d 869, 873 (D. Mont. 2006).  While some courts have found materials like those at issue here

properly subject to subpoena, others have found that materials relating to matters such as chain

of custody, laboratory protocols, and accreditation do not bear sufficient relationship to the

reliability of a methodology in question.[4] See, e.g., United States v. Castro-Motta, No. 11-00033,

2012 U.S. Dist. LEXIS 114732, at *7 (D. Colo. Aug. 15, 2012).

    In addition, although Rule 17(c) is here applied to a third party and Rule 16 applies only

to the Government, the Court is mindful that Congress did not intend "by Rule 16 to give a

limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest

terms." Bowman Dairy v. United States, 341 U.S. 214, 220, 71 S. Ct. 675, 95 L. Ed. 879 (1951).

Expert disclosures are governed by Rule 16(a)(1)(G).  The purpose of the disclosures, in part, is

to provide the defendant with a "fair opportunity to test the merit of the expert's testimony

through focused cross-examination."  United States v. Vasquez, 258 F.R.D. 68, 74 (E.D.N.Y.

2009). [5]  In pertinent part, Rule 16 requires as follows:

---

[4] Defendant points to United States v. Ocasio, No. 11-2728, 2013 U.S. Dist. LEXIS 207241, at *15 (W.D. Tex. May 28, 2013). In that case, defendant presented evidence, based on forensic examination, that the Government used particular software to conduct an illegal search of his computer. Id. at 14. The Court considered this evidence, that the requested material was "perhaps the only way" to determine the truth of defendant's allegation, and defendant's specific request for  "a discrete piece of software known to exist" – i.e., the source code and certain related documentation. Id. at 14-16.  In light of these factors, the Court concluded that a Rule 17(c) Subpoena was appropriate. Id. In obvious respects, Ocasio differs materially from the matter at bar.
[5] Courts have denied defendant's requests for additional information when the Rule 16 expert disclosure was sufficient to afford defendant a fair and adequate opportunity to challenge the expert's testimony.  Cf. United Vasquez, 258 F.R.D. at 74.

[T]he government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial…The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G).

      **b.  Subpoena to Cybergenetics**

Defendant's good faith, and the broad potential probative relevance of the information sought, are not in doubt.  Nonetheless, the majority of the Subpoena runs afoul of applicable rules and case law.

To demonstrate that he is not on a "fishing expedition," Defendant states as follows:

The records relate directly to the potential shortcomings of the software because they seek instances where the software has failed to perform correctly, failed to perform as expected, or required changes to the code, or which will reveal the circumstances under which the results could be unreliable, inaccurate, imprecise, or otherwise problematic, or because they will describe other limitations of the software.

The Subpoena itself states that the information is sought "[f]or a review of Cybergenetics' claims that TrueAllele is verified and/or validated."  Nowhere does Defendant suggest that he knows that the requested materials exist, or of their contents.  He seeks "potential" information that the materials might "reveal."  The language of the Subpoena supports this perspective, as it tends to describe wide-ranging, catch-all categories.   The Court is left with the overall impression is that Defendant is attempting to use Rule 17(c) as an investigatory tool – <u>i.e.</u>, to conduct discovery of a type that the Rule does not allow.

For example, in Paragraph 6)o, Defendant seeks validation studies in accordance with FBI standards for Forensic DNA Testing Laboratories. At the same time, however, he asserts that Cybergenetics is not a forensics laboratory, is not subject to forensic laboratory standards, does not "claim to subscribe to existing general standards for forensic casework," and does not

"follow standards required in the relevant fields."  In other words, he requests materials that he suggests do not exist.  Other requests are overbroad and insufficiently specific.  For example, Paragraph 5)2 requests documents relating to "materials underlying the software version(s)" used in this case, including "[s]oftware development and operating materials, including but not limited to" those in fifteen separately enumerated categories.  Paragraph 5)4 requests "Products of validation study efforts, including proposals, notes, memos, reports, graphics, tables, summaries, conclusions, and any resulting publications, presentations, and reports"; 5)2h seeks "internal and external communications regarding development plans, processes, or requests."  These categories cover a tellingly broad swath of information, and the Subpoena's use of language such as "including but not limited to" and "all" suggests that it crosses an important line. Other requests, such as Paragraphs 5)2k and l, and  6)b and g, appear geared towards investigating the possibility of human error in this specific case -- by requesting, for example, proficiency tests and responses thereto by Cybergenetics personnel. In addition to other defects in this request, Defendant does not make clear the relationship of such information to the software's foundational validity.  A request for "[p]roof of appropriate security protection," set forth in Paragraph 6)q, is not a request for specified materials; the same is true for Paragraph 6)n, which seeks "Features and limitations of…TrueAllele…and the impact that those items will have on validation process."  The wide net cast by Defendant's requests also preclude meaningful, granular assessment of issues surrounding admissibility of the requested materials. These various deficiencies render the Subpoena unsuitable for enforcement, and compliance therewith unreasonable and burdensome; they also preclude the Court from effecting any curative modification today.

In addition, I note the Government's assertion that it has produced to Defendant a significant amount of information regarding Cybergenetics and the DNA testing in this case. The Government has provided Defendant with a report and supporting case packet, which includes information regarding the system's sensitivity, specificity, and reproducibility, a case-specific mini-validation study, and data and parameter inputs.  The Government provided additional discovery, including case-specific data and reports. Defendant suggests that certain categories of material were partially provided.  This is the status, for example, of Paragraphs 5)3, 4, and 5)2j.   There is no indication, however, that Defendant has inspected the Government's files, despite being invited to do so.[6]  There is also no indication that Defendant is aware that any of the allegedly unproduced materials exist.

The source code, a primary focus of both the amicus and the parties' submissions, is addressed in Paragraph 5)2c and merits separate discussion.  At this juncture, this Paragraph does not appear to suffer from the breadth and specificity defects addressed supra. This Court is not the first to face issues surrounding Cybergenetics' production of the source code for TrueAllele. Of particular interest to the Court is the suggestion that elsewhere and relatively recently, Cybergenetics has indicated a willingness to make its source code available to defense counsel, with specific conditions.  Indeed, this suggestion has arisen in a case in which Nathaniel Adams, Defendant's expert witness, testified. State v. Simmer, 935 N.W.2d 167, 177 (Neb. 2019); see also State v. Baugh, 2019 Ga. Super. LEXIS 418, *18 (Super. Ct. Ga. Apr. 29, 2019).

---

[6] Per Defendant, in the days prior to seeking the Subpoena, defense counsel sought discovery from the Government. The Government stated that its file was open for Defendant's review, but it believed it had sent everything already. Defendant suggested to the Government the use of two cloud-based services for sharing materials. The Government responded that it would not send anything, but that its file was open for review by the defense. It appears that discussions ended there, as Defendant moved ex parte for the issuance of a Subpoena the next day.  Once again, the Court must encourage the parties to make every effort to address issues surrounding the exchange of information without Court intervention.

Within two weeks of today's Order, the Government shall file a Notice stating whether Cybergenetics is willing to disclose its source code to the defense. If so, the Notice shall include a proposed Order setting forth the conditions, if any, under which Cybergenetics and the Government would be amenable to such disclosure.  The defense has already indicated amenability to a protective order.  Of course, Cybergenetics is under no obligation to so agree under any condition, and if it does not, the Court will proceed to adjudicate this aspect of the Motion to Quash. It would, however, be a waste of resources to do so if extrajudicial resolution remains possible.  Pending Notice from the Government, therefore, this issue will be held in abeyance.

## CONCLUSION

In conclusion, the Motion to Quash will be granted in part and the remainder, relating to the source code, will be held in abeyance.  The Court does not disregard the essential nature of the TrueAllele evidence to this case, but the Subpoena, as written and modified by proposal, cannot stand under applicable standards.  Today's Order does not equate to a finding that Defendant would never be entitled to the information encompassed by the Subpoena; it merely addresses the submissions placed directly before the Court. The nature of the Subpoena renders it prohibitively unwieldy for the Court to effectively parse and modify same today, such that quashal remains the only feasible option.  The Court will allow an additional two weeks to determine whether issues surrounding disclosure of the source code can be resolved without judicial intervention.

An appropriate Order follows.

BY THE COURT:

_____

Donetta W. Ambrose
Senior Judge, U.S. District Court

Dated:  January 21, 2021

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES                         )  19-369
                                      )
     v.                            )

LAFON ELLIS

## ORDER

AND NOW, this 21st day of January, 2021, it is hereby ORDERED, ADJUDGED, and

DECREED that the Government's Motion to Quash is GRANTED in part, and the remainder

held in abeyance, as discussed in the foregoing Opinion.  By February 4, 2021, the Government

shall file a Notice stating whether Cybergenetics is willing to disclose its source code to the

defense. If so, the Notice shall include a proposed Order setting forth the conditions, if any,

under which Cybergenetics and the Government would be amenable to such disclosure.

BY THE COURT:

_____

Donetta W. Ambrose

Senior Judge, U.S. District Court