IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 19-369 |
| | ) | |
| LAFON ELLIS | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENT CONCERNING SOURCE CODE PROTECTIVE ORDER**

AND NOW comes the United States of America, through its counsel, Stephen R. Kaufman, Acting United States Attorney for the Western District of Pennsylvania, and Brendan T. Conway, Assistant United States Attorney for said district, and on behalf of the parties, respectfully submits its Supplement Concerning Source Code Protective Order.

The defendant recently filed a Supplement Concerning Source Code Protective Order in which it indicated that it had no objection to the Court entering the same protective order entered by the Court in *New Jersey v. Pickett*, which was attached as Exhibit 3 to that pleading. The Court directed the Government to "specify and state the sentence/provision [of the Picket Protective Order] .to which it objects; state the grounds for the objection; and, if applicable, state an alternative proposed sentence/provision.

The government has exactly one objection to the *Picket* protective order. The language appears on Page 17 of the protective order and it reads as follows: "The Defense Expert shall be allowed to download portions of the source code as necessary to analyze the source code and prepare for litigation onto a thumb drive or other electronic storage device." The government proposes that the Court eliminate that sentence from the *Pickett* protective order and include in its protective order the following language: "no one is permitted to electronically copy any portion of the source code." The rest of the Pickett protective order is acceptable to the government.

The trial court in *Pickett* offered no analysis as to why, in that case, the Court viewed the electronic copying of the software necessary. As the defense has made clear, it intends to argue that the above-quoted provision allows it simply electronically copy the entire source code onto another electronic device. It has no intent to copy only a portion of the source code.

The government will not reiterate the points it made in its Response and Brief Related to Protective Order (ECF No. 148), other than to note that innovation is critical to the development of science, and Courts and society encourage innovation by protecting the rights of those who innovate to profit from their innovation. The TrueAllele software is an incredibly important innovation that frees the innocent and helps to ensure that the guilty are held responsible, and if we expect companies like Cybergenetics to continue to produce products like TrueAllele, we must protect its valuable trade secrets.

The problem with allowing the electronic copying of the software is that anyone who gets access to the electronic copy of the source code can easily transfer that source code to another individual. Once done, there is no mechanism for getting that source code back or for even identifying the culprits, much less holding those individuals responsible for their misconduct. And once the source code is publicly available, TrueAllele is essentially worthless and Cybergenetics will have lost the millions of dollars it took to create TrueAllele. Thus, prophylactic measures are necessary to protect something so valuable – just as most of us take prophylactic measures to protect our valuables, such as locking are cars and our homes.

Thus, to protect innovation, the protective order must limit anyone's ability to simply cut and paste the source code from one electronic device to another. That is the most likely way by which this source code will become publicly available, and, without it, there really is no protection. A protective order without that provision is the equivalent of leaving millions of dollars in an

unlocked car on a public street. Sure, it is illegal and unethical for someone to take that money, but law and the ethics of the public provide no real protection from the theft.

Thus, the electronic copying of the source code is the focal point of the dispute between the parties and allowing of the electronically copying that is the primary fault of the *Pickett* protective order. As the Court noted in denying the government's Motion for Reconsideration, the Court determined that "some level of access to the source code" was appropriate. (ECF 151, pg. 1). It did not hold that unfettered ability to electronically copy the source code was appropriate. A protective order without allowing the electronic copying will provide access to the source code. The defense will be able to review and search the source code electronically under controlled circumstances; it just will not be able to electronically copy it. And that level of access has proven sufficient time and time again as these same defense experts have had no trouble falsely opining that software like TrueAllele is unreliable without electronically copying the software.

As this Court also noted in denying the government's Motion for Reconsideration, "It is apparent that there are many methods of testing or validating a software program[.]" Id. And that is of course true. The defendant has the ability to validate the software using methods other than electronically copying the software, including, for example, conducting validation studies, running the data through similar programs, and reviewing the source code. Thus, the Court has already rejected the notion that the only method of validating this software includes a process that permits electronically copying the source code. Just because the defendant prefers a source code review that includes electronic copying the source code, as opposed to other methods, does not mean that the Court should permit the defendant to electronically copy the software. The electronic copying is a step too far and runs contrary to precedent and the standard used in the industry.

As discussed in previous pleadings, numerous courts in criminal cases have issued

protective orders that do not allow for electronically copying the source code. <u>Commonwealth of Virginia v. Clark Watson</u>, Crim. No.: FE-2019-279 (Cir. Cr. of Fairfax Co. Va. Oct. 9, 2020); <u>Washington v. Fair</u>, Case No. No. 10-1-09274-5 SEA (Wash. Superior Ct. King Co. Jan. 12, 2017); <u>Illinois v. Morgan</u>, Case No. 16-8715 (Cook Co. Cir. Ct. Feb. 13, 2019). Additionally, the nationally recognized standard protective order used in the Northern District of California does not permit electronically copying the source code, and neither does the standard protective order in this district used by this Court and others in the Western District of Pennsylvania. And, of course, the *Pickett* court offered *no analysis* as to why it permitted electronically copying of the software, despite that Court being the first and only Court to ever order Cybergenetics to produce its source code under circumstances that allows for electronically copying – not a word about balancing the needs to protecting these valuable trade secrets. This Court should not be so cavalier.

      The Pittsburgh region has been a hub of innovation throughout much of its history and Cybergentics is just another example of a company, through hard work, talent, vision, and the investment of tremendous resources, has developed to product that advances science. It is a product that helps to free the innocent and ensure that the guilty face the consequences of their actions. It is a product that, through dozens of validation studies, has demonstrated its reliability and has proven reliable, as determined by Courts throughout this Country and the world. It is product that deserves the protections of the Courts, particularly when, as the Court has already noted, the defendant has the ability to test the validity of the software through various other avenues.

WHEREFORE, for the reasons set forth above and in its previous pleading, whatever protective order the Court ends up entering, that protective order should preclude the defense from electronically copying any portion the source code for TrueAllele.

        STEPHEN R. KAUFMAN
        Acting United States Attorney

        <u>s/ Brendan T. Conway</u>
        BRENDAN T. CONWAY
        Assistant U.S. Attorney
        U.S. Post Office & Courthouse
        700 Grant Street, Suite 4000
        Pittsburgh, Pennsylvania 15219
        (412) 644-3500 (Phone)
        PA ID No. 78726